IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MANUEL VALENTIN CORTEZ, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> GRASS CLIPS, INC., : <br> : <br> Defendant. : | CIVIL ACTION NO. <br> 1:22-cv-717-AT |

**ORDER**

This is a Fair Labor Standards Act ("FLSA") case involving unpaid overtime wages. Before the Court is Plaintiff's Motion for Summary Judgment on Liability, Willfulness, and Bad Faith [Doc. 42].

**I.   Background[1]**

   **A.   The Parties, Work, and Method of Timekeeping**

Defendant Grass Clips, Inc. ("Grass Clips") is a landscaping business owned and managed by Mike Rodriguez. (Pl. SOMF, Doc. 48-2 ¶ 1). Grass Clips is a covered employer under the FLSA. (*Id.* ¶ 4). Grass Clips employed Plaintiff Manuel Valentin Cortez as a landscaper from some time in 2016 through September 2020. (*Id.* ¶ 5). As a landscaper, Plaintiff engaged in landscaping duties at customers'

---

[1] This statement does not represent actual findings of fact. *In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case.

homes, including cutting grass, edging, blowing lawns, pruning bushes, applying pest control, seeding and fertilizing lawns, planting flowers, and more. (*Id.* ¶ 7).

Throughout his employment, Plaintiff often worked more than 40 hours a week. (*Id.* ¶ 12). To track employee time, Defendant did not use an electronic clock-in/out system but instead used paper sheets where supervisors wrote down the times that employees worked. (*Id.* ¶¶ 16-17). The supervisor provided the sheets to Defendant's Office Manager, who entered the time into Excel spreadsheets. (*Id.* ¶¶ 18-19). Mr. Rodriguez (the owner) used these Excel spreadsheets to process payroll. (*Id.* ¶ 20).

B. **How Defendant Paid Plaintiff**

When Plaintiff began his employment in 2016, Defendant paid landscapers a base rate of $7.25 per hour plus a commission based on daily production — but no overtime. (*Id.* ¶¶ 22-23). In 2017, Mr. Rodriguez testified (as corporate representative) that Defendant changed the pay procedures such that employees were paid a base of $7.25 plus a "production percentage pay." (Grass Clips 30(b)(6) Dep., Doc. 43-1 pp. 44-47). As a part of this "production percentage pay," a landscaper got paid a percentage of what the company took in for jobs that he worked on, with any materials (e.g., pine straw) deducted from the initial amount the company took in from the job. (*Id.* pp. 46-47).[2] Different employees received different percentages, (*id.* p. 46), for example a driver might receive a higher

---

[2] For example, if one job was for $200, but Defendant paid $100 for pine straw for the job, the production percentage would be a percentage on the $100 left after the material costs were deducted. (*Id.* p. 47).

2

percentage than another landscaper who rode along and worked on the job (*id.* p. 51).

This "production percentage pay" was the system in place until late 2018 or early 2019, when Defendant began paying Plaintiff based on an "effective rate" method. (*Id.* p. 76). As a part of this "effective rate" method, Defendant paid Plaintiff a flat rate (of between $17 per hour and $19 per hour, depending on the particular date range) for all hours worked. (*Id.* p. 78) (Q: So you all agreed that he would get at least $18 an hour for all time worked . . .? A: "As an effective rate . . . the negotiated amount would be 18 per hour assuming he was finishing his houses."). This "effective rate," however was not paid in a straightforward manner (for example, through one check reflecting $18 per hour for the total hours worked). Instead, it was paid through two checks in any given pay period: one check in an amount for the total hours worked (e.g. 60 hours) times $7.25 (a "minimum wage base"); and a second check in an amount that reflected an "overtime" rate on the hours over 40 (e.g. 20 hours) plus a remainder amount that would ensure that the employee was paid $18 per hour for all hours worked. (*Id.* pp. 84-85).³ In early April of 2020, Plaintiff's "effective rate," or regular rate was raised from $18 to $19 per hour. (*Id.* pp. 98-99).

---

³ For example, in one workweek, Plaintiff worked 60 hours and 42 minutes (60.7 hours). Plaintiff was paid a total of $1092.60, which is the equivalent of $18 per hour (for 60.70 hours). Plaintiff was paid in two checks: one "minimum wage base" check for $7.25 x 60.70 = ~$440.08. He was paid a second check for $652.53, which reflected the amount of "overtime" pay ($3.625 "overtime rate" for 20.70 overtime hours = $75.04) plus a remainder amount (or the difference) necessary to meet the $18 per hour pay rate (here,

3

### C.  Defendant's Awareness of the FLSA

Before implementing the above pay practices, Defendant did not conduct any research regarding the FLSA, consult the FLSA or other statute or authority, or consult with any lawyers about his pay practices to ensure that they were compliant with labor laws. (Pl. SOMF, Doc. 48-2 ¶ 6).

### D.  Procedural History

Plaintiff filed this case as a putative collective action in 2022. (Doc. 1). The Court conditionally certified a collective action at the end of July 2022. (Doc. 20). No other employees opted in. Defendant's then-counsel sought to withdraw from the case in September 2022. (Docs. 21, 22). After some time, and after being advised that it could not proceed in this action without counsel, Defendant retained new counsel. (Docs. 32, 33). The parties then conducted discovery. Plaintiff has now filed a Motion for Summary Judgment on Liability, Willfulness, and Lack of Good Faith. (Doc. 42). Defendant responded, acknowledging liability but disputing that the conduct was willful or in bad faith, and disputing Plaintiff's damages calculations. (Doc. 48-1).

## II.  Legal Standard

Summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

$577.49 was necessary to reach the amount of $1092.60). (*Id*. pp. 83-86; *see also id*. pp. 93-94 (explaining that Plaintiff's total compensation for the week was $1092.60 which reflects an $18 per hour pay rate)).

party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting the Advisory Committee's note to FED. R. CIV. P. 56). "[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to establish that there is indeed a genuine issue as to the material facts its case. *Thompson v. Metro. Multi–List, Inc.*, 934 F.2d 1566, 1583 n.16 (11th Cir. 1991). A dispute of material fact "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). The Court must avoid weighing conflicting evidence. *Liberty Lobby*, 477 U.S. at 255. Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). But where a reasonable fact finder may "draw more than one

5

inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir. 1989). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

### III. Discussion

Plaintiff asserts one claim of willful failure to pay overtime in violation of the FLSA. 29 U.S.C. § 201 *et seq*. Defendant admits that Plaintiff was a nonexempt employee who worked more than 40 hours in a week and was not paid appropriate overtime, and therefore admits liability. (Def. Resp., Doc. 48-1 at ECF 2) ("Defendant does not dispute that there were unpaid overtime wages arising from Plaintiff's employment . . ."). The Court therefore **GRANTS** summary judgment in Plaintiff's favor on liability.

Despite this concession, Defendant disputes that its conduct was willful and therefore disputes that a three-year statute of limitations applies. Defendant also argues that its conduct was not in bad faith and therefore no liquidated damages should be awarded. Finally, Defendant disputes Plaintiff's damages calculations. (*Id.*) The Court addresses each of these issues below.

#### A. Whether Defendant's Conduct was Willful

While the FLSA limitations period is typically two years, it is extended to three years if the claim arises from a willful violation of the Act. 29 U.S.C. § 255(a).

6

To establish willfulness, a plaintiff must prove that his employer either (1) knew its conduct was prohibited by the statute <u>or</u> (2) showed reckless disregard about whether it was. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1280 (11th Cir. 2008) (internal quotation omitted). An employer demonstrates "reckless disregard" when it "fail[s] to make adequate inquiry into whether conduct is in compliance with the Act." *Id.* (quoting 5 C.F.R. § 551.104). Willfulness "does not require a showing of egregiousness." *Stone v. Troy Construction, LLC*, 935 F.3d 141, 150 (11th Cir. 2019). And the three-year statute of limitations may apply even when the employer did not *knowingly* violate the FLSA but rather where it "simply disregarded the possibility that it might be violating the FLSA." *Allen v. Board of Public Ed. For Bibb Cty.*, 495 F.3d 1306, 1324 (11th Cir. 2007). Even so, if an employer acts "unreasonably, but not recklessly, in determining its legal obligation," it is not willful. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13 (1988). The determination of willfulness is a mixed question of law and fact. *Id.*

    Here, in seeking summary judgment on willfulness, Plaintiff relies on evidence that the owner and corporate representative for Grass Clips testified that he did not consult the FLSA or any other authoritative statute, regulation, or letter before implementing the pay practices at issue. Nor did he conduct any research about applicable labor law or consult with an attorney. (Grass Clips 30(b)(6) Dep., Doc. 43-1 pp. 70-71, 100-101). Plaintiff further contends that Defendant clearly had an awareness of the minimum wage and overtime requirements since Defendant

7

initially paid employees a minimum wage of $7.25 (the federal minimum wage) and "overtime" as early as 2017, and Defendant understood overtime to mean "time and a half." (*Id.* pp. 55-56) (testifying that Defendant paid employees time and a half in 2017); *id.* p. 62 (testifying that he split up the paychecks to include overtime because it was "easy . . . for the guys to see" and he thought the "guys would like . . . how it's presented)). Defendant's pay records also have "overtime" included. (*See* Pay Records, Doc. 49-1). Mr. Rodriguez also testified that, years before, potential employees applying for jobs would ask "how much overtime do we pay." (Grass Clips 30(b)(6) Dep., Doc. 43-1 pp. 110-111).

Defendant argues that it was not willful because Mr. Rodriguez "was not aware of the FLSA until the instant action was filed." (Resp., Doc. 48-1 at ECF 5, 8) (citing Grass Clips 30(b)(6) Dep., Doc. 43-1 p. 56)). Defendant further argues that it was never put on notice that its pay practices were unlawful, and so there can be no finding of willfulness. *(Id.* at ECF 5-6, 9) (citing Grass Clips 30(b)(6) Dep., Doc. 43-1 p. 110) (testifying that no employee ever complained about not being paid overtime until complaint was filed)). Defendant also emphasizes Mr. Rodriguez's testimony that he created the "effective rate" pay plan to address employees' complaints that their pay fluctuated too much and that they wanted more stability. (*Id.* p. 42).

The parties do not raise any fact disputes that speak to willfulness but instead dispute whether the agreed-upon evidence is sufficient to demonstrate willfulness as a matter of law. Here, it is a close call. However, based on the

undisputed record evidence, the Court concludes that Defendant demonstrated a "reckless disregard" for whether its pay scheme was in violation of the FLSA under the governing authority. The legal authority does not require the plaintiff to show that the employer *knew* it was in violation of the FLSA in order to establish willfulness, *Allen*, 495 F.3d at 1324, and thus does not require that Defendant have been put on notice of violations before it can be found willful — as Defendant suggests. Rather, a reckless disregard can be shown by a failure to make "adequate inquiry" into whether a practice violates the act. 5 C.F.R. § 551.104.

Here, the evidence shows that Defendant — a business that had employed individuals for more than a decade — was aware of the existence of the minimum wage and overtime pay, was aware that "overtime" meant "time and a half," and was aware that employees (and prospective employees) often expected overtime pay in this line of work. Despite this awareness, and in today's information age, Defendant never sought to research and determine whether it was compliant with labor laws, and never sought guidance from anyone who might advise him of such obligations. And although no employees specifically complained that they were paid in a manner that was unlawful or violated the FLSA, employees did complain about the manner in which they were paid. Considering all this evidence, the Court concludes that Defendant "disregarded the possibility that it might be violating the FLSA." *Allen*, 495 F.3d at 1324. This is sufficient for a finding of willfulness as a matter of law.  5 C.F.R. § 551.104; *See, e.g.*, *Hardrick v. Airway Freigh Systems, Inc.*, 63 F.Supp.2d 898, 904 (N.D. Ill. 1999) (finding employer's actions were

9

willful as a matter of law where defendant knew of overtime, did not investigate whether its policy relating to overtime hours was legal, and did not consult with any attorney); *Flores v. City of San Gabriel*, 824 F.3d 890, 906-07 (9th Cir. 2016) (finding defendant's actions willful as a matter of law where it took no action to determine whether its cash-in-lieu of benefits pay scheme complied with FLSA).

Because the Court finds that Plaintiff has established willfulness as a matter of law, the three-year statute of limitations applies.

B. **Whether Defendant's Actions Were in Good Faith**

"Under the FLSA, a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008); 29 U.S.C. § 216(b). However, a district court may, in its discretion, order no liquidated damages where the employer shows that the conduct giving rise to the FLSA violation was "in good faith and that [defendant] had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]." 29 U.S.C. § 260; *Quarles v. Hamler*, 652 F. App'x 792, 794 (11th Cir. 2016). The burden is on the employer to show good faith and reasonable grounds for believing there was no FLSA violation. *Rodriguez,* 518 F.3d at 1272.

To meet its burden, the employer must show both objective and subjective good faith. *Id.* To show objective good faith, the employer must demonstrate that it had a reasonable belief that its conduct conformed with the FLSA. *Wajcman v. Inc. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1358 (S.D. Fla. 2009). To show

10

subjective good faith, the employer must show an "honest intention to ascertain what the FLSA requires" and to act in accordance with those requirements. *Id.* (citations omitted). "Absent a showing of both the subjective and objective elements of the good faith defense, liquidated damages are mandatory." *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1566-67 (11th Cir. 1991).

On review, the Court finds that Defendant has not carried its burden to show that it had both subjective and objective good faith to believe there was no FLSA violation. Defendant's owner and corporate representative, Mr. Rodriguez, acknowledged at his deposition that, over many years of operating his business, he never researched whether Defendant's pay practices were in compliance with labor laws and never sought counsel from anyone who might advise him on this. This conduct plainly falls short of demonstrating an "honest intention to ascertain what the FLSA requires and to act in accordance with those requirements." *Wajcman*, 620 F. Supp. 2d at 1358. Nor can Defendant show that it had a "reasonable belief" that its conduct conformed with the FLSA because it claims to have been unaware of the FLSA. Defendant's cited authority is plainly inapposite. *See Rindfleisch v. Gentiva Health Servs.*, 2015 U.S. Dist. LEXIS 198997 (N.D. Ga. Oct. 28, 2015) (finding that employer proved good faith defense in case involving reasonable dispute about nuanced FLSA issue where employer established a task force to consider various pay options and where task force consulted with in-house counsel and considered DOL guidance).

In short, Defendant fails to carry its burden and cannot avail itself of the good faith defense. Plaintiff is entitled to liquidated damages.

**C.   Damages**

Plaintiff argues that he is entitled to the following damages as a matter of law. Plaintiff calculates his damages for unpaid overtime wages for a 3-year limitations period to be $4,352.12, and the same amount in liquidated damages, for a total of $8,704.24 (MSJ, Doc. 42-1 at ECF 14-15). Plaintiff also requests post-judgment interest and seeks reasonable attorneys' fees.[4]

Defendant disputes these damage amounts and instead contends that (for a 3-year limitations period) Plaintiff is entitled to only $778.62 (doubling this amount for liquidated damages would yield $1,557.24). (Resp., Doc. 48-1 at ECF 48). After lengthy review, it appears that, despite this large gap, the parties' calculations are actually not so different.

Defendant appears to acknowledge that Plaintiff's hourly rate was between $17.50 and $19 an hour during the relevant time frame.[5] Defendant's own calculations match Plaintiff's as to what Plaintiff should have been paid in overtime pay for *most* workweeks. (*See* Def. Pay Calculations, Doc. 48-4 at ECF 4-5). However, the parties' calculation disparity appears to result from the differing treatment of four payments that Defendant made to Plaintiff: on 8/21/19;

---

[4] Plaintiff plans to file a motion for attorneys' fees after the liability determination.
[5] (*See* Grass Clips 30(b)(6) Dep., Doc. 43-1 pp. 78, 84-85, 98-99). Defendant's spreadsheet indicates that the "pay rate" for the relevant dates is between $17.50 and $19. (*See* Def. Pay Calculations, Doc. 48-4).

12

1/10/2020; 1/17/2020; and 3/25/20. Although Defendant does not explicitly indicate as much, it appears from its calculations that Defendant believes that Plaintiff was overpaid on these four dates (for a total amount of approximately $3,435.81). (See Def. Calculations, Doc. 48-4 at ECF 4-5). Therefore, it appears that Defendant believes that it is entitled to recoup these alleged overpayments and that these alleged overpayments should offset (and reduce) Plaintiff's overtime damages.

The circumstances of these four payments are distinct: one involves an apparent clerical error about the identity of the employee who worked on a certain date (3/25/20); two appear to involve holiday or winter bonuses (on 1/10/2020; 1/17/2020); and one appears to involve some other form of a discretionary bonus (8/21/19).

Before addressing the circumstances of each payment, the Court provides the following legal guidance. To the extent that Plaintiff was paid holiday or winter bonuses, Defendant is not permitted to credit those discretionary bonuses toward the payment of wages and overtime required under the FLSA. *See* 29 U.S.C. § 207(h)(1) (explaining that money paid that is not part of an employee's "regular rate" is not creditable towards overtime compensation required under the FLSA); 29 U.S.C. § 207(e) (explaining that "sums paid as gifts . . . at Christmas or other special occasions" and "payments made for occasional periods where no work is performed due to vacation, holiday" are not part of an employee's "regular rate").

Indeed, any discretionary bonus that is provided at the sole discretion of the employer (as opposed to a nondiscretionary bonus based on a formula or the employee meeting a certain goal) is not creditable towards overtime compensation. *See also* DOL Wage & Hour Division, Fact Sheet #56C, https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses ("A discretionary bonus may not be credited towards overtime compensation due under the FLSA"); *see also Vire v. Entergy Operations, Inc.*, 2016 WL 10575139, *6 (E.D. Ark. Oct. 31, 2016) (finding that incentive plan bonuses could not be credited towards overtime compensation) ("Where, as in this case, the bonus payments are not related to the performance of overtime and are instead bonuses paid at [defendant's] sole discretion, the payments are not included in the regular rate of pay nor creditable as overtime."). As Plaintiff correctly states: a defendant cannot hand out holiday or discretionary bonuses and then claim it does not have to pay overtime. (Reply, Doc. 50 at 14).

Keeping this authority and guidance in mind, the Court now turns to each of the alleged overpayments. First, as to the payments on 1/10/2020 and 1/17/2020, the records indicate that these payments (of $500 and $409) were for "vacation pay" and "winter pay." (Pay Records, Doc. 49-1 at ECF 51). Under the governing authority outlined above, Defendant cannot credit these holiday/seasonal bonuses toward the payment of overtime. 29 U.S.C. § 207(h)(1). Consequently, Defendant cannot rely on these payments to reduce Plaintiff's damages.

Next, the Court turns to the alleged overpayment of $3,033.33 on 8/21/19. The relevant pay records reflect that Defendant worked 37.92 hours during the workweek at a rate of $18 per hour. (*See* Pay Records, Doc. 49-1 at ECF 32). Defendant's calculations indicate its position that Plaintiff should only have been paid $682.56 (37.92 x $18) and that Plaintiff was overpaid by $2,350.77. (Def. Calculations, Doc. 58-5 at ECF 4). Plaintiff argues that this payment was a discretionary bonus. Defendant does not provide its position as to the nature of this specific payment. Defendant has not argued that this payment, or any other, was the result of an error. Rather, Defendant argues more generally that Plaintiff's calculations fail to account for "instances in which Plaintiff was overpaid through bonuses in addition to agreed-upon performance bonuses." (Def. Resp., Doc. 48-1 at ECF 14). In briefing, Defendant repeatedly refers to the alleged bonuses as either "discretionary bonuses" or as "additional bonuses as tokens of appreciation from Defendant" that were "not agreed upon by the parties." (Def. Resp., Doc. 48-1 at ECF 4-5).

Accordingly, Defendant has not argued or provided any evidence to support that this 8/21/19 payment was some form of *non*discretionary bonus — for example, one based on a predetermined formula, or a safety or attendance bonus, all of which would be creditable towards overtime requirements. 29 U.S.C. § 207(e)(5)-(7). Because there is no evidence that would allow a factfinder to determine that this payment was based on a nondiscretionary bonus or an error, the factfinder would have to conclude that it was a discretionary bonus. As noted

15

above, discretionary bonuses are not creditable towards overtime pay, 29 U.S.C. § 207(h)(1), and Defendant cannot rely on this payment to reduce Plaintiff's damages. *See* DOL Wage & Hour Division, Fact Sheet #56C, https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses.

As to the payment on 3/25/20 — an alleged overpayment of $176.04 — Defendant contends that Plaintiff was "overpaid for hours worked." (Rodriguez Decl., Doc. 48-4 ¶ 4). Although Defendant does not explain why, it appears that Defendant believes that approximately 9 hours of work were misattributed to Plaintiff because the *typed* pay record for 3/25/20 includes another employee's name for those hours. (*See* Typed Pay Records, Doc. 49-1 at ECF 62). However, the handwritten records for 3/25 indicate that: "Claudia accidentally enter Manny as working. She misread Manual Sort for Manuel." (Handwritten Pay Records, Doc. 49-3 at ECF 110). The spreadsheet created by Defendant during the course of business indicates that Plaintiff did work on 3/25/20 (see Pl. Ex. 5, manually filed), and Mr. Rodriguez testified that this spreadsheet was an accurate reflection of the times that Plaintiff worked in 2019 and 2020. (Grass Clips 30(b)(6) Dep., Doc. 43-1 p 108). Mr. Rodriguez also testified that there was no evidence to indicate that Plaintiff did not work for hours for which he was paid. (*Id.* p. 120). Considering the full context of this payment and all the relevant evidence, a reasonable jury could only conclude that Plaintiff worked on 3/25/20 and was properly paid for such work.

In sum, based on the evidentiary record before the Court, Plaintiff has demonstrated that he is entitled to damages in the amount of $4,352.12 as a matter of law (before accounting for liquidated damages).

## IV. Conclusion

For the reasons above, Plaintiff has shown that Defendant's violations of the FLSA were willful and so a 3-year limitations period applies. Defendant fails to establish the good faith defense as a matter of law and so Plaintiff is entitled to liquidated damages. Finally, Plaintiff has established the damage amount as a matter of law. Consequently, Plaintiff's Motion for Summary Judgment [Doc. 42] is **GRANTED**. Plaintiff is entitled to **$8,704.24** in damages. Plaintiff's counsel is **DIRECTED** to file any motion for attorney's fees within 21 days of the entry of this Order. However, the parties may prefer to negotiate the attorney's fees amount without additional briefing (and without the cost of such briefing). If the parties prefer to negotiate fees, they should file a joint statement so indicating no later than **June 13, 2024**. It is unfortunate that the parties were not able to resolve this matter earlier — without the need, or cost, of summary judgment briefing. The Court hopes counsel and the parties will bear this in mind as they endeavor to resolve the issue of attorney's fees.

**IT IS SO ORDERED** this 30th day of May 2024.

_____
**Honorable Amy Totenberg**
**United States District Judge**